James K. ELLIS, O.D., Plaintiff

v.

RIVERPORT ENTERPRISES, INC. d/b/a
Water Town Yacht Club, Defendant.

Civil Action No. 95–116.

United States District Court,
E.D. Kentucky,
Covington Division.

Feb. 27, 1997.

Ronald A. Meyer, White, Getgey & Meyer Co., Cincinnati, OH and Meredith L. Lawrence, Crestview Hills, KY, for Plaintiff.

Thomas A. Sweeney, Lange, Quill & Powers, PSC, Newport, KY, for Defendant.

### OPINION AND ORDER

BERTELSMAN, Chief Judge.

In January 1994, plaintiff, James Ellis (**Ellis**), lived on his boat, which he docked at Water Town Yacht Club, a marina owned by defendant, Riverport Enterprises (**Riverport**). On January 31, 1994 at approximately 10:30 p.m., Ellis and his brother Bob arrived at the marina to go aboard the boat.

When the men arrived, the river was out of its banks. To enable boat owners to reach the marina's floating docks, Riverport Enterprises had placed a temporary floating walk-

way between the land and the docks. The floating walkway bridged the flood waters and connected a set of land-based stairs to the docks. A photograph of the scene is attached as an appendix hereto.

On the night at issue, snow and ice covered the ground and marina ramps making driving and walking hazardous. Nevertheless, Ellis proceeded across the floating walkway toward the dock where he kept his boat. According to Ellis, while he was walking across the walkway, he fell and broke his left humerus and injured his left rotator cuff.[1]

Kentucky's statute of limitations for personal injury actions is one year. K.R.S. 413.140. Ellis filed suit against Riverport on August 5, 1995, approximately one year and six months after his incident. Admittedly, Ellis filed his action outside of Kentucky's limitations period. In contrast, and also undisputed, under admiralty law the statute of limitations on Ellis's claims would be three years, and Ellis's claims would not be time-barred. Therefore, the issue before the court is whether Kentucky or admiralty law applies to Ellis's claims.

## ANALYSIS

When a court has admiralty jurisdiction over a tort claim, substantive admiralty law applies. *Wiper v. Great Lakes Engineering Works,* 340 F.2d 727, 730 (C.A.6), *cert. denied,* 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60 (1965). If admiralty jurisdiction does not exist, state law applies. *Id.; Florida Fuels, Inc. v. Citgo Petroleum Corp.,* 6 F.3d 330, 332 (C.A.5 1993), *cert. denied, Authement v. Citgo Petroleum Corp.,* 511 U.S. 1019, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994).

"[T]he primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce...." *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982). In analyzing an admiralty jurisdiction issue, one must keep in mind that:

The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts may be restricted only by the action of Congress.... Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which a federal statute has defined.

*Oman v. Johns–Manville Corp.,* 764 F.2d 224, 227 (C.A.4), *cert. denied, Oman v. H.K. Porter Co.,* 474 U.S. 970, 106 S.Ct. 351, 88 L.Ed.2d 319 (1985) (quoting *Executive Jet Aviation, Inc. v. Cleveland,* 409 U.S. 249, 272–73, 93 S.Ct. 493, 506–07, 34 L.Ed.2d 454 (1972)). "Principles of federalism counsel that only when the federal interest in uniformity outweighs other interests at stake should admiralty jurisdiction deprive the state of its traditional control over personal injury claims...." *Jenco v. United States,* 1989 WL 122428, *3 (N.D.Ill.1989) (unpublished).

"The traditional test for admiralty jurisdiction asked only whether the tort occurred on navigable waters. If it did, admiralty jurisdiction followed; if it did not, admiralty jurisdiction did not exist." *Grubart v. Great Lakes Dredge & Dock,* 513 U.S. 527, ——, 115 S.Ct. 1043, 1047, 130 L.Ed.2d 1024 (1995). Under the traditional rule, "admiralty courts lacked jurisdiction over ... a claim following a ship's collision with a pier insofar as it injured the pier, for admiralty law treated the pier as an extension of the land." *Id.*

Congress modified the traditional rule in 1948 when it passed the Extension of Admiralty Act, 46 U.S.C.Appx. § 740. *Id.* The Act extended admiralty jurisdiction to cases where injury is "caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." 46 U.S.C.Appx. § 740.

After Congress passed 46 U.S.C.Appx. § 740, the Supreme Court struggled to define the statute's reach. *See Grubart,* 513 U.S. at ——, 115 S.Ct. at 1043; *Sisson v. Ruby,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990); *Foremost Ins. Co.,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300;

---

1. Riverport disputes a number of these "facts." Nevertheless, it argues that even assuming Ellis's allegations are true, the court does not have admiralty jurisdiction over Ellis's lawsuit.

*Executive Jet Aviation, Inc.,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454. Eventually, the Court settled on a two-part test that requires a plaintiff seeking to invoke admiralty jurisdiction to show (1) that "the tort occurred on navigable water ... or [if the injury occurred on land, that it] was caused by a vessel on navigable water," and (2) that the general character of the incident has a potentially disruptive impact on maritime commerce and a substantial relationship to traditional maritime activity. *Grubart,* 513 U.S. at ——, 115 S.Ct. at 1048. The Court labeled the two-parts of this inquiry the "location" and "connection" tests. *Id.*

### The Location Test

To satisfy the location test, Ellis must show his accident occurred on a navigable waterway. For purposes of admiralty jurisdiction, courts consistently have held piers, docks, and other spudded platforms are extensions of the land and not within admiralty jurisdiction. *Id.* at ——, 115 S.Ct. at 1047; *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 212, 92 S.Ct. 418, 425, 30 L.Ed.2d 383 (1971) ("Piers and docks [are] consistently deemed extensions of land; injuries inflicted to or on them [are] held not compensable under maritime law."); *Chapman v. City of Grosse Pointe Farms,* 385 F.2d 962 (C.A.6 1967) (holding tort that occurred on dock was outside of admiralty jurisdiction); *Wiper,* 340 F.2d at 730 (holding where plaintiff fell on dock and then rolled into navigable waters and drowned, tort was complete when plaintiff hit dock and therefore was consummated on land outside of admiralty jurisdiction); *Florida Fuels, Inc.,* 6 F.3d at 332 (holding that because the gangway serves as a rough dividing line between state and maritime jurisdiction, a dock owner's duty to crew members is defined by application of state, not maritime, law); *Cook v. Belden Concrete Products, Inc.,* 472 F.2d 999, 1002 (C.A.5), *cert. denied,* 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973) (holding floating construction platform secured to dock by ropes was not a vessel for purposes of Jones Act or general admiralty jurisdiction). In so hold-

ing, courts carefully distinguish docks from gangplanks, which are considered extensions of the vessels to which they are attached and so within admiralty jurisdiction.[2] *White v. United States,* 53 F.3d 43, 46–47 (C.A.4) (distinguishing pier from gangplank for purposes of admiralty jurisdiction and holding admiralty jurisdiction existed, because plaintiff's incident occurred on the gangplank).

■ While it extended admiralty jurisdiction, the Extension of Admiralty Act did not change the rule that a dock is an extension of the land, while a gangplank is a part of its vessel. *Victory Carriers, Inc.,* 404 U.S. at 206, 92 S.Ct. at 422 ("The gangplank has served as a rough dividing line between the state and maritime regimes."); *White,* 53 F.3d at 46–47 (finding admiralty jurisdiction existed because plaintiff's injury was caused by negligently maintained gangplank, not pier). Instead, the Act merely "invest[s] admiralty with jurisdiction over 'all cases' where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land." *Grubart,* 513 U.S. at —— ——, 115 S.Ct. at 1047–48.

■ In the instant case, Ellis alleges he fell on a floating walkway that led to the dock where his houseboat was moored. The walkway, technically speaking, was not part of Riverport's permanent dock at the Water Town Yacht Club. Instead, it was a makeshift way to get across flood waters to the permanent dock. Nevertheless, as a matter of function, the walkway was an extension of the dock. Without doubt, the walkway was not a gangplank. It did not connect a vessel to Riverport's dock but rather connected Riverport's dock to the land.

Because Ellis's incident occurred on Riverport's dock and was not caused by a ship or other vessel on navigable water, he can satisfy neither the express language of 46 U.S.C.Appx. § 740 nor the location element of the Supreme Court's admiralty jurisdiction test. *Victory Carriers, Inc.,* 404 U.S. at 212, 92 S.Ct. at 425 (noting that injuries inflicted on piers and docks are not compensable un-

---

**2.** The Random House College Dictionary defines a gangplank as "a flat plank or portable bridge-like structure for use by persons boarding or leaving a vessel at a pier." Random House College Dictionary 543 (Revised ed. 1980).

der maritime law); *Chapman,* 385 F.2d at 962 (holding tort that occurred on dock was outside of admiralty jurisdiction); *Wiper,* 340 F.2d at 730 (holding where plaintiff fell on dock and then rolled into navigable waters and drowned, tort was complete when plaintiff hit dock and therefore was consummated on land outside of admiralty jurisdiction). Therefore, Ellis's claims fall outside of this court's admiralty jurisdiction and are controlled by Kentucky tort law.

## CONCLUSION

Because Ellis cannot satisfy the Supreme Court's location test, this court does not have admiralty jurisdiction over his claims.

Therefore, Kentucky substantive law governs the claims, *Wiper,* 340 F.2d at 730, and the court must dismiss them as timed barred under K.R.S. 413.140. Procedurally, the court will treat defendant's motion to dismiss as one for judgment on the pleadings and dismiss Ellis's claims under FRCP 12(c).

Therefore, the court having heard argument of counsel and being otherwise sufficiently advised,

**IT IS ORDERED** that defendant's motion for judgment on the pleadings (Doc. # 18) be, and it is, hereby **granted,** and plaintiff Ellis's claims against Riverport Enterprises be, and hereby are, **dismissed** with prejudice.